NUTRITIONAL SUPPORT SERVICES,
L.P., and NSS Health Ltd.,
Plaintiffs,

v.

Zell B. MILLER, Governor of the State of Georgia, and Russell Toal, Commissioner, Department of Medical Assistance of the State of Georgia, Defendants.

No. Civ. 1:92–CV–395 JED.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 16, 1992.

Jack C. Tranter, Baltimore, Md., Michelle B. Rapoport, Atlanta, Ga., John W. Jansak, Nevett Steele, Jr., Towson, Md., for plaintiffs.

Mary Foil Russell, Office of State Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on the Plaintiffs' Motion for Preliminary Injunction [7–1], and the Plaintiffs' Motion for Leave to Amend Complaint [17–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiffs' motion to amend should be granted and Plaintiffs' motion for preliminary injunction should be denied.

## BACKGROUND

Plaintiffs, Nutritional Support Services, L.P. ("NSS") and NSS Health, Ltd. ("NSS Health"), sell health care products to nursing home residents. Plaintiffs then bill

Medicare, which normally pays eighty percent of the cost. The remaining twenty percent and any Medicare deductible then normally is paid by the appropriate state Medicaid program.[1]

Prior to June 1991, Plaintiffs were participating suppliers in the Georgia Medicaid program and received reimbursement for supplies sold to Georgia Medicaid recipients. In June 1991, however, Georgia implemented a new policy requiring that suppliers of durable medical supplies have a valid business license and an in-state business location or be located within a fifty mile radius of the state border. Neither Plaintiff meets these requirements, as NSS is a limited partnership that has its principal place of business in Knoxville, Tennessee while NSS Health is a limited partnership organized under California law with its principal place of business in Pennsylvania. Since the new policy was implemented, both Plaintiffs have been barred from participating in the state Medicaid program and all claims that they have submitted for payment have been rejected.

In February 1992, Plaintiffs filed a complaint against the Governor and the Commissioner of the Department of Medical Assistance, alleging that the new policy violated: (1) the Social Security Act of 1965, as amended, 42 U.S.C. § 1396, *et seq.*, (2) the Equal Protection Clause, (3) the Privileges and Immunities Clause of Article IV, and (4) the Commerce Clause. At the same time they filed their complaint, Plaintiffs moved for a preliminary injunction to prevent the state from enforcing the new policy. Then, in June 1992, Plaintiffs moved to amend their complaint and add a claim under 42 U.S.C. § 1983.

## DISCUSSION

### A. *Amendment of the Complaint*

■ The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely given when justice so requires." FED.R.CIV.P. 15(a). "Courts have interpreted [amendment] provisions liberally, in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single judicial proceeding." *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir.1975).[2] In explaining the amendment standard, the Eleventh Circuit Court of Appeals has observed that "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989). In determining whether a substantial reason exists to deny leave to amend, the district court should consider the following factors: (1) undue delay, bad faith, or dilatory motive on the part of the movant, (2) repeated failure to cure deficiencies by amendments previously allowed, (3) undue prejudice to the opposing party by virtue of allowance of the amendment, and (4) futility of amendment. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990).

■ Defendants have not provided the Court with any evidence showing undue delay, bad faith, or repeated failure to cure deficiencies by Plaintiffs, nor have they given any indication that amendment would be prejudicial to Defendants. Defendants' sole argument against amendment appears to be that amendment would be futile because Plaintiffs lack standing to sue under the Social Security Act. The Court does not find this argument persuasive as, even assuming that Plaintiffs lack standing under the Act, there is no allegation that they lack standing to raise their constitutional claims. As § 1983 merely "provides a remedy against state officials for deprivations of rights established elsewhere under federal law," *Silver v. Baggiano*, 804 F.2d 1211, 1216 (11th Cir.1986), the addition of a

---

1. Unlike Medicare, which is a federally-administered health insurance program, Medicaid is administered by individual states within the parameters established by the Social Security Act, federal implementing regulations, and applicable state regulations and laws.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

§ 1983 count will merely provide the Court with a jurisdictional basis to hear Plaintiffs' constitutional claims.[3]

In light of the fact that consideration of the above-mentioned factors does not convince this Court that a substantial reason exists to deny Plaintiff's motion, this Court believes that justice requires allowing Plaintiffs to amend their complaint to add a claim under 42 U.S.C. § 1983.

### B. *Preliminary Injunctive Relief*

In order to warrant the grant of preliminary injunctive relief, the moving party must show four separate elements: (1) that the moving party has a substantial likelihood of ultimate success on the merits; (2) that the moving party will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury to the movants outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Sofarelli v. Pinellas County*, 931 F.2d 718, 723–24 (11th Cir.1991). A preliminary injunction is an extraordinary remedy and should not be granted unless the movant clearly carries the burden of persuasion on all four elements. *Id.* at 724. Furthermore, if any element is not proven, there is no need to address the other elements. *Id.*

To determine whether Plaintiffs have a substantial likelihood of ultimate success on the merits of the entire action, the Court will address each claim raised by Plaintiffs.

### 1. Statutory claim

States that elect to participate in Medicaid with the federal government must comply with Title XIX of the Social Security Act of 1965. *Silver v. Baggiano*, 804 F.2d 1211, 1215 (11th Cir.1986). Plaintiffs initially assert that they are entitled to relief under a section of the Act commonly known as the "freedom of choice provision," codified as 42 U.S.C. § 1396a(a)(23).[4]

The Court concludes that Plaintiffs have not shown a substantial likelihood of ultimate success on the merits of their statutory claim for two reasons. First, it is not clear that Plaintiffs will even have standing to raise the statutory claim. The Eleventh Circuit Court of Appeals has held that providers (as opposed to Medicaid recipients) have "no express or implied right of action under the Social Security Act" to challenge a state's policy. *Silver*, 804 F.2d at 1215. The *Silver* court went on to address the issue of whether providers have a cause of action under § 1983 but ultimately left this question open. *Id.* at 1217. However, the court did observe that "the Medicaid statute as a whole … was intended to benefit Medicaid recipients," *id.* at 1216, and that "there is no indication in the language [of the Act] that health care practitioners are given any rights by this provision." *Id.* at 1217.

A second reason that compels the Court to conclude that Plaintiffs have not shown a substantial likelihood of success on their statutory claim is that it appears that Defendants' conduct may fall within an exception to the general freedom of choice rule. Federal regulations provide that states may interfere with the recipient's freedom of choice by "[s]etting reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2). Defendants have articulated several reasons for the restrictions, such as protecting recipients by allowing the Department to exercise some degree of control over providers and assisting the Department in properly allocating scarce public resources. (Def.'s Resp. to Pl.'s Mot. for Prelim. Injunc. at 8). Moreover, Plaintiffs have not cited any authority from this or any other circuit in which a court has held that similar location requirements have been found to violate the Social Security Act. Because it is not clear to the Court that Plaintiffs will have

---

**3.** The question of whether § 1983 provides a jurisdictional basis to hear Plaintiffs' statutory claim is discussed *infra.*

**4.** This section provides that:
   A State plan for medical assistance must—
   (23) … provide that any individual eligible for medical assistance (including drugs) may

obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services.

standing to assert a violation of the Act under § 1983 or, even if they do have standing, that they will prevail on the merits, the Court finds that Plaintiffs have not shown a substantial likelihood of ultimate success on the merits of their statutory claim.

### 2. Equal Protection claim

■ Plaintiffs have not alleged that the state's policy involves any suspect classification or fundamental right. Thus, the policy will be upheld on equal protection grounds so long as it is rationally related to a legitimate governmental purpose. *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981). Given the facially legitimate purposes that the state has articulated for its policy, the Court concludes that Plaintiffs have not shown a substantial likelihood of success on their equal protection claim. *See, e.g., Silver,* 804 F.2d at 1218–19 (state policy reimbursing medical doctors but not podiatrists for podiatric services did not violate equal protection even though state did not articulate any reason for the policy).

### 3. Article IV Privileges and Immunities Clause

■ The Privileges and Immunities Clause of Article IV prohibits significant discrimination by a state against nonresidents.[5] The Court finds that there is one serious obstacle to Plaintiffs' ultimate success on this claim—the Supreme Court has held that corporations and other business entities are not "citizens" within the meaning of this clause. *Paul v. Virginia,* 75 U.S. (8 Wall.) 168, 177, 19 L.Ed. 357 (1869) ("The term citizens [as used in Article IV Privileges and Immunities Clause] applies only to natural persons ... not to artificial persons created by the legislature."); *see also Asbury Hospital v. Cass County,* 326 U.S. 207, 210–11, 66 S.Ct. 61, 63, 90 L.Ed. 6 (1945) (corporation is not citizen); *W.C.M. Window Co., Inc. v. Bernardi,* 730 F.2d 486, 492–92 (7th Cir.1984) (unincorporated association is not citizen). Thus, the Court concludes that Plaintiffs have not shown that they are substantially likely to prevail on this argument.

### 4. Commerce Clause

■ The so-called "dormant commerce clause" provides that when Congress has not enacted laws that regulate a given area, states may regulate local aspects of interstate commerce so long as they do not discriminate against or unduly burden interstate commerce. *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Moreover, when Congress does legislate in a given area it may "create[ ] an area in which the States may regulate free from Commerce Clause restraints." *Id.* at 35, 100 S.Ct. at 2015. It appears to the Court that Congress, by enacting very specific statutes such as the Social Security Act and accompanying administrative regulations, has regulated extensively in the area of medical assistance programs. Thus, those statutes, rather than the dormant commerce clause, appear to provide the appropriate standard for determining the degree to which states can interfere with interstate commerce.

■ The Social Security Act provides that states must "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C. § 1396a(a)(19). Defendants assert that the restrictions challenged in this case are intended to ensure that services can be monitored in a manner that protects the best interests of the recipients. (Def.'s Resp. to Pl.'s Mot. for Prelim. Injunc. at 12). The Court concludes that NSS has not shown that it is substantially likely to be able to demonstrate at trial that the restrictions at issue in this case violate the statutory Medicaid scheme.

■ Moreover, even if the Commerce Clause rather than the Social Security Act provides the appropriate analysis, the Court does not believe that Plaintiffs have shown that it is substantially likely that they will be able to establish a violation of

---

**5.** The clause provides that: "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

that clause. In the absence of federal legislation, "the states, pursuant to their police powers, retain the authority to regulate matters of 'legitimate' public concern, even when interstate commerce is affected." *Continental Illinois Corp. v. Lewis*, 827 F.2d 1517, 1520 (11th Cir.1987). Given the nature of the interests at stake and the asserted reasons for the restrictions, the Court cannot conclude that it is substantially likely that Plaintiffs will be able to establish that the restrictions do not fall within the "legitimate public concern" exception to the Commerce Clause.

Because the Court concludes that Plaintiffs have not shown a substantial likelihood of ultimate success on the merits of any of their claims, the Court finds it unnecessary to consider whether any of the other elements necessary to warrant injunctive relief have been established. *Sofarelli v. Pinellas County*, 931 F.2d at 724.

### CONCLUSION

Accordingly, Plaintiffs' Motion for Leave to Amend Complaint [17–1] is GRANTED and Plaintiffs' Motion for Preliminary Injunction [7–1] is DENIED.

SO ORDERED.